## BENTON MURRAY v. STATE.

No. A-1786.   Opinion Filed March 28, 1914.

(139 Pac. 707.)

1.   HOMICIDE — Assault With Intent to Kill—Self-Defense—Evidence.   In a prosecution for assault with a deadly weapon with intent to kill, it is considered by the court that there was no evidence tending to show that the shooting was in self-defense.

2.   SAME—Harmless Error—Instruction on Self-Defense.   Error, if any, in instructions defining the law of self-defense is not prejudicial to the defendant, where the evidence does not justify instructions on self-defense.

*Appeal from District Court, Greer County;*
*G. A. Brown, Judge.*

Benton Murray was convicted of an assault and battery by means of a deadly weapon, and appeals.   Affirmed.

*S. B. Garrett,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *R. E. Gish,* for the State.

DOYLE, J.   This appeal is prosecuted from a judgment and sentence entered on the 12th day of January, 1912, in accordance with the verdict of the jury, finding the plaintiff in error, Benton Murray, guilty of an assault with a deadly weapon, and assessing his punishment at imprisonment in the penitentiary for one year.

The information charged that "C. C. Murray and Benton Murray did make an assault on George Fluty by shooting him with a shotgun with intent to kill the said George Fluty." When the case was called for trial, the defendants demanded a severance, and the county atorney elected to try Benton Murray first.

Plaintiff in error's brief contains the following summary of the facts in evidence:

"C. C. Murray and George Fluty are brothers-in-law. Benton Murray, the plaintiff in error, is a son of C. C. Murray. Benton Murray lived with his father about one and one-half miles southeast of Mangum at the date of the occurrences involved in the case, and George Fluty lived about three miles southeast of Mangum at the same time. The Northwestern Railroad runs through the farm of C. C. Murray, passing about 300 yards from Murray's residence. In December, 1911, prior to this difficulty, George Fluty and his son Romance or Andrew Fluty, in a difficulty with C. C. Murray, had held Murray and cut and stabbed Murray almost to death with a pocket knife. Fluty and his son were being prosecuted in the courts for this offense. On the evening of the difficulty for which defendant is prosecuted in this case, C. C. Murray was driving a pair of mules belonging to him from his house to his pasture across the railroad, and his son Benton, plaintiff in error, was assisting him. Murray was crossing the railroad and opening the gate at the right of way for the mules to go through, and Benton was some 60 yards further south on or near the railroad, turning the mules to the gate, as George Fluty came along, with his sons Romance Fluty and Andrew Fluty and a young man named Hurleng some 50 yards behind him, all walking along the railroad track. Murray told Fluty that he had rather he would not be passing through his field, from which an altercation arose between George Fluty and C. C. Murray, and George Fluty called to his boys to come on; Fluty having stopped on the track near Murray, and, as claimed by Murray, made a demonstration as if to draw a weapon, whereupon Murray hallooed to his son Benton to run to the house and get the gun. Benton ran to the house and got the gun, and Fluty and the boys passed on beyond Murray further down the track, and Murray got into a cut or where the dirt had been removed from a ditch, so that, when Benton returned, he did not see his father. As Benton returned with the gun, and when within about 30 yards of Fluty, who had just come out of the railroad cut, he hallooed at Fluty and asked him to go on and let his father alone. Fluty stopped, and some curse words passed back and forth, during which plaintiff in error fired one barrel of the shotgun at Fluty, striking him in the back, side, and legs with birdshot. Benton Murray claimed that at the time the shot was fired Fluty was making a demonstration as if to draw a weapon from his pocket, and on this point Fluty said he was not armed, but would not state whether he put his hand behind or towards the pocket as if to draw a weapon or not. Both barrels of the gun were loaded.

but no attempt was made to fire a second time. The above is a fair statement of the 200 pages and over of the evidence."

The evidence further shows that George Fluty, immediately after he had been shot, was removed to a hospital, where he was operated on and 34 punctures found in his body, and fourteen or fifteen shot were taken out; and that the wounds were of such a character as might have caused death.

The only errors urged by the plaintiff in error are based upon the instructions defining the law of self-defense. We think the objections made are hypercritical. Under all the testimony, including that of codefendant, C. C. Murray, and that of plaintiff in error, there was not even the appearance of imminent danger to himself or his father, C. C. Murray, at the time of the shooting. He states that before he returned with the gun Fluty "came out of the cut and was coming on east," which meant that Fluty was walking away from old man Murray, southeast down the track. His testimony also shows that he first called out to Fluty and asked him "why he kept jumping on and abusing the old man." This after Fluty had moved off 60 yards or more down the track and away from where they had met. His advance upon Fluty with a shotgun was a menace, and the fact is undisputed that he first accosted Fluty and he was following him when he shot him. There was no apparent necessity for it in the defense of his father or himself.

When we consider the rule that what a defendant testifies to against his interest is to be taken as true, there is no evidence tending to show that plaintiff in error acted in self-defense or in defense of his father when he made the assault. One who seeks and brings on an affray cannot shield himself under a plea of self-defense. The facts, as testified to by plaintiff in error, in his own behalf, afford no justification for his murderous assault. The charge of the court was eminently fair and without fault.

Judgment affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.